**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 16 2026

_____ N P. WEIMER, Clerk
BY: _____ Deputy Clerk

**PETER NWAIZUZU,**

    Plaintiff,

*v.*

                                Civil Action No. **1:26 -CV- 1428**

**CITY OF ATLANTA, GEORGIA,**

    Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### (42 U.S.C. § 1983)

## I. INTRODUCTION

1.    This civil rights action challenges the constitutionality of the City of Atlanta's Tree Protection Ordinance ("Tree Ordinance"), codified at Atlanta Code of Ordinances, Chapter 158, Article II ("Ordinance"), as applied to private property owners who seek to remove trees from their own land without government permission.

2. The Ordinance prohibits any person from removing, destroying, or injuring any tree of six inches diameter at breast height ("DBH") or greater located on private property without first obtaining a permit from the City of Atlanta. Atlanta Code of Ordinances § 158-101(a). This requirement applies without exception — including to dead, diseased, dying, or hazardous trees.

3. When a permit is granted, property owners are routinely compelled, as a condition of removal, to either replant trees meeting specific species and caliper standards, contribute to the City's Tree Trust Fund, or pay "recompense" fees calculated on the DBH of trees removed. Atlanta Code of Ordinances §§ 158-66, 158-103. These monetary and in-kind exactions are imposed without any individualized determination that they are proportional to the environmental impact caused by a specific property owner's specific tree removal.

4. These requirements are precisely the kind of unconstitutional exaction scheme condemned by the United States Court of Appeals for the Sixth Circuit in F.P. Development, LLC v. Charter Township of Canton, Michigan, 16 F.4th 198 (6th Cir. 2021) (recommended for publication), in

which the court struck down a structurally identical tree removal ordinance — one that likewise required permits for trees of six inches DBH or greater and imposed standardized mitigation payments — as an unconstitutional condition under Nollan v. California Coastal Commission, 483 U.S. 825 (1987), Dolan v. City of Tigard, 512 U.S. 374 (1994), and Koontz v. St. Johns River Water Management District, 570 U.S. 595 (2013).

5.    The Ordinance also vests the City Arborist with broad, standardless discretion to approve or deny permits, impose conditions, and calculate monetary exactions — all without adequate procedural safeguards or ascertainable standards to guide that discretion or provide property owners with meaningful notice of the applicable criteria.

6.    The Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections I and III of the Georgia Constitution, protect Plaintiff's right to use and manage his own private property free from the unconstitutional conditions, regulatory taking, and arbitrary governmental interference imposed by the Ordinance.

7.    Plaintiff Peter Nwaizuzu brings this action pursuant to 42 U.S.C. § 1983 and seeks a declaration that the Ordinance is unconstitutional on its face and as applied, injunctive relief prohibiting its enforcement against him, nominal damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

## II. JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this action arises under the Constitution of the United States and 42 U.S.C. § 1983.

9.    This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 65.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as Defendant City of Atlanta is a municipal corporation located within the Northern District of Georgia, Atlanta Division, and all events giving rise to the claims herein occurred within this District.

## III. PARTIES

11.   Plaintiff Peter Nwaizuzu is an individual and property owner who owns real property, located in the Buckhead neighborhood and within the corporate limits of the City of Atlanta, Fulton County, Georgia. Plaintiff has a direct, personal, and ongoing stake in the constitutionality of the Ordinance, as it restricts his ability to use and manage trees on his own property.

12.   Defendant City of Atlanta is a municipal corporation organized and existing under the laws of the State of Georgia, with its principal offices located at 55 Trinity Avenue S.W., Atlanta, Georgia 30303. The City of Atlanta enacted, administers, and enforces the Ordinance through its Office of Buildings, Department of City Planning, and Department of Parks, Recreation and Cultural Affairs.

13.   At all relevant times, Defendant's agents, officers, and employees acted under color of state law within the meaning of 42 U.S.C. § 1983.

## IV. THE CITY OF ATLANTA TREE PROTECTION ORDINANCE

**A.   Permit Requirement**

14.   Section 158-101(a) of the Atlanta Code of Ordinances provides that no person shall remove, destroy, or injure any tree of six inches DBH or greater located on private property without first obtaining a permit from the City. This requirement applies regardless of the species, condition, age, or location of the tree on the private parcel.

15.   There are no categorical exemptions for dead, dying, diseased, or structurally hazardous trees — trees that may pose an imminent safety risk to persons or property. Atlanta Code of Ordinances § 158-101(a). All such trees require a permit before removal.

16.   The permitting process requires property owners to: (a) submit a formal application to the City Arborist; (b) pay application fees; (c) submit a site plan that includes a comprehensive tree survey identifying the size, species, and location of all trees of six inches DBH or greater; (d) provide topographic information; (e) identify tree-save areas; and (f) specify proposed tree replacement plans. Atlanta Code of Ordinances § 158-105.

17. Pursuant to Ordinance No. 25-O-1341, effective June 25, 2025, property owners whose projects may affect any tree must also schedule and complete a pre-application Arborist Meeting with the Arborist Plan Review staff before a permit application will even be accepted.

**B.    Mitigation Requirements and Recompense Fees**

18. As a condition of receiving a permit, the City imposes one or more of the following requirements: (a) replanting of replacement trees meeting specified species, caliper, and placement criteria; (b) planting of replacement trees in a local park or on public lands; or (c) payment of monetary "recompense" into the City's Tree Trust Fund. Atlanta Code of Ordinances §§ 158-103, 158-66.

19. The Ordinance establishes a "no net loss of trees" policy as its explicit goal. Atlanta Code of Ordinances § 158-27. This policy effectively treats private trees as a public resource that must be preserved or replaced at the private owner's expense whenever a permit is sought.

20. These mitigation requirements are standardized and pre-set. They are applied categorically based on the number and type of trees removed, without any individualized inquiry into whether the specific removal on Plaintiff's specific parcel caused the degree of environmental harm that the mitigation is designed to offset. This is the same deficiency that doomed Canton's ordinance in F.P. Development: The Sixth Circuit held that "Canton's mitigation options could offset F.P.'s tree removal, and they arguably involve some individualized assessment given that Canton must determine the number and type of trees cut. But Dolan requires more." F.P. Development, 16 F.4th at 207.

21. Minimum tree coverage requirements vary by zoning district. For example, in R-5, R-4-A, and R-4-B residential districts, the minimum is 35 inches of total DBH per acre. Atlanta Code of Ordinances § 158-103. These requirements apply irrespective of the owner's purpose for removing a tree or the impact of the specific removal.

22. Replacement trees must be a minimum of two and one-half inches in caliper and, once planted, may not subsequently be removed without yet

another permit. Atlanta Code of Ordinances § 158-103. This creates a perpetual, self-replicating permit obligation running with the land.

## C.   Discretionary Authority and Vague Standards

23.   The City Arborist is granted broad authority to approve or deny permit applications, impose conditions on approvals, determine the extent of tree canopy impacted, specify replacement requirements, and calculate recompense fees. Atlanta Code of Ordinances §§ 158-101, 158-102, 158-103. No meaningful standards constrain this discretion.

24.   The criteria for permit denial set forth in Section 158-102 include subjective and vague standards such as the tree's "environmental impact," "specimen" status, and the tree's contribution to "the forest ecosystem." These terms are not defined with sufficient precision to give property owners fair notice or to constrain the Arborist's exercise of discretion.

25.   As the Sixth Circuit observed in F.P. Development, government entities enforcing tree ordinances must "make some effort to quantify its findings in support" of mitigation exactions, and may not rest on "pre-set

assumptions, rather than an individualized impact assessment." F.P. Development, 16 F.4th at 208 (citing Dolan, 512 U.S. at 395-96; Goss v. City of Little Rock, 151 F.3d 861, 863 (8th Cir. 1998)). Atlanta's Ordinance fails this requirement on its face.

**E.    Enforcement and Penalties**

26.    The City Forester and City Arborist are granted police power to enforce the Ordinance, including the authority to issue citations and to call upon the Atlanta Police Department to halt any tree removal in progress. Atlanta Code of Ordinances § 158-33.

27.    Violations may result in: (a) civil penalties and fines as provided in Atlanta Code of Ordinances § 1-8; (b) mandatory payment of recompense calculated on the DBH of each tree removed; and (c) criminal prosecution. Each tree removed without a permit constitutes a separate offense, and fines may accumulate rapidly where multiple trees are at issue.

28.    In documented cases, property owners have been fined $1,300 or more for removing a single tree without a permit. Multiple trees removed in a single

incident may result in combined penalties reaching tens of thousands of dollars.

### E.    The Ordinance's Failure to Account for Third-Party Utility Vegetation Management

29.    The City of Atlanta's Tree Protection Ordinance makes no meaningful provision for trees that are trimmed or removed by third parties — including electric utilities — acting pursuant to independent legal authority entirely outside the control of the property owner. The Ordinance imposes permit requirements and penalties on "persons" who trim or remove regulated trees, but does not define responsibility in a manner that distinguishes between a property owner who voluntarily removes a tree and one on whose land a utility contractor performs mandated line-clearance work.

30.    Georgia Power and its authorized contractors possess well-established legal authority — including rights-of-way, easements, and statutory authorization under Georgia law — to trim, cut back, and remove vegetation within designated clearance zones adjacent to electrical

transmission and distribution lines. Such vegetation management is performed routinely and on a recurring cycle throughout the State of Georgia to maintain safe operation of electrical infrastructure, prevent outages, and reduce wildfire and public safety risks. The property owner has no legal right to prevent this work and is not consulted in advance of its performance.

31. The Ordinance contains no provision expressly exempting utility-mandated vegetation management from its permit requirements and penalty scheme. Nor does the City's enforcement protocol require investigating whether vegetation removal was performed by the property owner or by a third-party utility contractor before issuing citations and assessing fines. This structural deficiency transforms the Ordinance from a permitting regime into an instrument of arbitrary punishment against property owners who exercised no control over the conduct being penalized.

**F.    The Ordinance's Treatment of Hazardous Trees — An Inadequate and Dangerous Scheme**

29.    The City of Atlanta brands its Tree Protection Ordinance as a public safety measure, yet the Ordinance itself creates a grave and well-documented threat to public safety by interposing a mandatory government approval process between a homeowner and a hazardous tree threatening that homeowner's family and home.

30.    The Ordinance extends its permit requirement without exception to dead, dying, diseased, and structurally compromised trees — the very trees most likely to fall and kill. Atlanta Tree Conservation Commission, "The Basics" (stating "there are no exceptions, either by species or present condition. Even dead trees require a permit for removal."). A property owner who identifies a leaning, rotting, or storm-damaged tree towering over a child's bedroom cannot act immediately to remove it. The Ordinance requires that owner to first navigate a government permitting bureaucracy.

31.    The Ordinance does provide a limited procedure for "imminent hazard" situations during business hours: a property owner may call a specific City Arborist manager to request expedited review. If the emergency occurs outside of business hours, the owner may remove the tree but must leave a voicemail, take two photographs, and obtain a retroactive permit within

five business days. Atlanta Tree Conservation Commission, "Tree Removal Permits." If the City Arborist subsequently determines that the tree did not constitute a sufficient emergency, the property owner faces recompense charges and fines — even for a tree they removed to protect their family from imminent harm.

32.    This regime is constitutionally inadequate for three independent reasons. First, the determination of whether a tree is "sufficiently" hazardous to justify removal is left to the retrospective judgment of a City Arborist — a government official with a structural incentive to preserve trees and assess fees. Second, the scheme provides no meaningful guidance to a homeowner who must make a split-second decision during a storm, in the dark, when a structurally compromised tree is swaying over a sleeping child. Third, the threat of fines operates as a powerful deterrent that discourages homeowners from acting even when the risk is obvious and imminent.

33.    The consequences of this scheme are not theoretical. They are documented, fatal, and have unfolded on Atlanta's own streets. The government may not hide behind a nominal emergency procedure while

operating a permit regime that demonstrably delays, deters, and prevents property owners from protecting life and safety on their own property.

## V. FACTUAL BACKGROUND

29. Plaintiff Peter Nwaizuzu is the owner of real property located within the corporate limits of the City of Atlanta, Georgia (the "Property").

30. The Property contains one or more trees with a diameter at breast height of six inches or greater, regulated by the City's Tree Protection Ordinance.

31. Plaintiff determined that certain of these trees needed to be removed in order to make lawful and productive use of his Property. The trees at issue interfere with Plaintiff's ability to use and enjoy his Property as he is otherwise entitled to do under applicable zoning and property law.

32. In accordance with the Ordinance, Plaintiff submitted a permit application to the City of Atlanta seeking authorization to remove the trees identified in his application.

33.    The City of Atlanta denied Plaintiff's permit application.

34.    The City's denial was not supported by any individualized findings demonstrating that the removal of Plaintiff's specific trees would cause a quantifiable level of environmental harm to the surrounding area sufficient to justify the permit denial or the mitigation conditions previously indicated. This mirrors the evidentiary failure the Sixth Circuit found fatal in F.P. Development, where Canton likewise "pointed to nothing indicating, for example, that F.P.'s tree removal effects a certain level of environmental degradation on the surrounding area." F.P. Development, 16 F.4th at 208.

35.    As a direct result of the permit denial, Plaintiff is unable to remove trees on his own Property and is therefore prevented from making full and lawful use of his Property.

36.    Plaintiff has no adequate remedy at law. The continued enforcement of the Ordinance against him causes ongoing and irreparable harm to his constitutionally protected property rights for which monetary damages alone would be insufficient.

37.   Plaintiff has exhausted, or been effectively prevented from pursuing, administrative relief under the Ordinance. Any further administrative appeal would be futile given the City's categorical denial and the structural constitutional flaws in the Ordinance itself.

**B.   The Ordinance's Lethal Consequences — Atlanta's Recent Record**

38.   The danger posed by Atlanta's tree permit regime to the lives and safety of property owners and their families is not speculative. It is confirmed by a pattern of tragic, documented incidents in which trees falling onto Atlanta homes have killed and injured residents — including incidents in which prior warnings went unheeded and permits were never obtained.

39.   On or about February 16, 2025, a 61-year-old Atlanta resident named Edward Johnson was killed in his own home when a tree collapsed onto it during a severe storm. His daughter was forced to dig her mother out of the rubble. Firefighters worked for hours attempting rescue operations. The tree fell while the family slept.

40. On or about May 3, 2025, ten-year-old A'Erica Dixon was killed in her home on Mims Street S.W. in Atlanta's Mozley Park neighborhood when a tree crashed through her roof during overnight storms while she slept. Her mother and grandmother were rushed to the hospital with serious injuries. Critically, family members reported that a large limb from the same tree had already fallen during Hurricane Helene in September 2024, nearly crushing the family's vehicle — and that the landlord had been informed of the danger but the tree was never removed. The City's permit process had not resulted in its removal.

41. These tragedies illustrate a pattern that the Ordinance creates and perpetuates: a homeowner or landlord who recognizes a hazardous tree faces a choice between either (a) navigating a government permit process that can take days, weeks, or months, or (b) removing the tree immediately and facing fines, penalties, and recompense charges. The Ordinance's deterrent effect is especially acute for lower-income property owners for whom the threat of a $1,000-per-tree penalty is financially devastating. The government has, in effect, placed the cost of bureaucratic delay on the most vulnerable Atlanta residents — and that cost is measured in human lives.

42. The Atlanta metro region is subject to frequent, violent, and historically damaging storm events. From 1980 through 2024, Georgia experienced 134 confirmed weather and climate disaster events each causing more than one billion dollars in damage. The frequency of catastrophic weather events causing tree failures in the Atlanta area is not episodic — it is predictable, recurring, and well-documented.

43. No legitimate government interest in urban canopy preservation justifies a regulatory scheme that foreseeably deters property owners from removing trees that threaten to fall and kill. A government that protects trees at the cost of children's lives has fundamentally inverted the purpose of law.

**C.  The Georgia Power Incident — Wrongful Citation of Plaintiff for Utility Work He Did Not Perform**

44. In or around September 2025, three trees located on Plaintiff's Property were trimmed by representatives or authorized contractors of Georgia Power Company. The trimming was performed as part of Georgia Power's routine utility line-clearance maintenance program, which Georgia Power

conducts throughout its service territory to maintain safe electrical clearances from overhead transmission and distribution lines. This vegetation management work was performed pursuant to Georgia Power's independent legal authority, including rights-of-way, easements, and applicable provisions of Georgia law governing electric utility operations.

45. Plaintiff did not cut, trim, remove, or authorize the removal or trimming of the three trees in question. Plaintiff did not direct any contractor to perform vegetation management on his property. Plaintiff had no advance notice that Georgia Power or its contractors intended to perform trimming work on any specific date. The trimming was initiated, planned, and executed entirely at the direction of Georgia Power, consistent with its established schedule of recurring line-clearance operations — not at Plaintiff's request or with his participation in any form.

46. Despite Plaintiff's complete absence of any role in the trimming, officials of the City of Atlanta issued a citation against Plaintiff and imposed civil penalties of approximately $1,000 per tree — a total civil penalty of approximately $3,000 — along with additional mitigation or recompensation requirements. The City's enforcement action was

predicated on the fact that the trimmed trees were located on Plaintiff's property, not on any finding that Plaintiff caused, directed, authorized, or was in any way responsible for the trimming.

47. The City's enforcement action was conducted without any meaningful investigation. City personnel performed a drive-by observation of Plaintiff's property, photographed the trimmed trees, and issued the citation — without contacting Georgia Power, without reviewing utility maintenance records, without interviewing any contractor or utility representative, and without making any inquiry whatsoever into who actually performed the work. The City did not serve Plaintiff with advance notice or afford him any pre-deprivation opportunity to present evidence that a utility company, not Plaintiff, was responsible for the trimming.

48. The City's position — that a property owner is automatically liable for any tree trimming or removal occurring on his property, without regard to who performed the work or under what authority — is constitutionally untenable. It imposes punishment for conduct Plaintiff did not perform, could not have prevented, and had no legal mechanism to stop. It transforms the property owner into an insurer of the City's tree canopy

against the lawful acts of third parties who possess independent authority to act on his land. This is not regulation — it is confiscation by attribution.

49.    The arbitrary imposition of significant financial penalties on a property owner based on third-party conduct, without investigation, without notice, and without any opportunity to be heard prior to the deprivation, violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph II of the Georgia Constitution.

## VI. CONSTITUTIONAL FRAMEWORK AND CONTROLLING AUTHORITY

### A.    The Takings Clause

38.    The Fifth Amendment to the United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. This protection is incorporated against the states through the Fourteenth Amendment. Chicago, B. & Q. R. Co. v. City of Chicago, 166 U.S. 226 (1897).

39.   A regulatory taking occurs when a government regulation "goes too far" in restricting the use and enjoyment of private property. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). A regulation that deprives an owner of all economically beneficial use of property constitutes a per se taking. Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992).

40.   Even where a regulation does not deprive an owner of all economic use, a taking may be found under the multi-factor balancing test of Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978), which considers: (a) the economic impact of the regulation; (b) the extent of interference with reasonable investment-backed expectations; and (c) the character of the government action.

**B.    The Unconstitutional Conditions Doctrine — Nollan, Dolan, and Koontz**

41.   Under the unconstitutional-conditions doctrine, "the government may not deny a benefit to a person because he exercises a constitutional right." Koontz v. St. Johns River Water Management District, 570 U.S. 595, 604 (2013) (quoting Regan v. Taxation with Representation of Wash., 461 U.S.

540, 545 (1983)). In the land use context, the doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." Id.

42. In Nollan v. California Coastal Commission, 483 U.S. 825 (1987), the Supreme Court held that a permit condition must have an "essential nexus" to the government's legitimate interest that would justify outright denial of the permit.

43. In Dolan v. City of Tigard, 512 U.S. 374 (1994), the Court held that a permit condition must also be "roughly proportional" in nature and extent to the projected impact of the proposed development. Critically, the government "must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." Id. at 391 (emphasis added). "No precise mathematical calculation is required, but the [government] must make some effort to quantify its findings in support" of its exactions. Id. at 395-96.

44.    In Koontz v. St. Johns River Water Management District, 570 U.S. 595 (2013), the Supreme Court clarified that Nollan and Dolan apply with equal force to monetary exactions — including fees, mitigation payments, and recompense — demanded as conditions of permit approval. The government cannot avoid constitutional scrutiny by substituting a monetary demand for a physical property demand.

**C.    F.P. Development, LLC v. Charter Township of Canton — Directly Controlling Persuasive Authority**

45.    The Sixth Circuit's decision in F.P. Development, LLC v. Charter Township of Canton, Michigan, 16 F.4th 198 (6th Cir. 2021) (recommended for publication), is directly on point and provides the most detailed federal appellate analysis of a tree removal ordinance under Nollan, Dolan, and Koontz to date.

46.    In F.P. Development, Canton's Tree Ordinance — structurally identical to Atlanta's — prohibited the removal of trees of six inches DBH or greater without a permit, and required property owners to either replant trees or pay into a municipal tree fund as a condition of permit approval. F.P.

Development, 16 F.4th at 200-01. Like Atlanta's Ordinance, Canton's mitigation requirements were standardized: one replacement tree for every non-landmark tree removed, and three for every landmark tree. Id. at 201.

47.   The Sixth Circuit affirmed the district court's holding that the ordinance, as applied, constituted an unconstitutional condition under Nollan, Dolan, and Koontz, because Canton "failed to carry its burden to show that it made the required individualized determination" that its mitigation demands were roughly proportional to the impact of F.P.'s specific tree removal. Id. at 207.

48.   The Sixth Circuit specifically held that Canton's standardized, pre-set mitigation formula — like Atlanta's — did not satisfy Dolan's rough proportionality requirement. The court rejected Canton's position because: (a) the Township provided no evidence that F.P.'s removal caused a quantifiable level of environmental degradation; (b) Canton did not consider that some of the removed trees were dead, in a clogged drainage ditch, and that their removal may have actually improved the surrounding environment; and (c) Canton's evidence on replacement costs was based on fifteen-year-old data, making it arguably stale. Id. at 208.

49.   The Sixth Circuit further held that the fact that a township representative "went to F.P.'s property to count and categorize the trees F.P. cut down does not alter" the conclusion, because the "individualized assessment" Canton could point to "relates to the initial review of a permit application, not to the proportionality of the mitigation requirements." Id. Counting trees is not the same as making a constitutionally adequate individualized determination of impact.

50.   The Sixth Circuit also cited with approval a Texas appellate decision, Mira Mar Development Corp. v. City of Coppell, 421 S.W.3d 74, 95-96 (Tex. Ct. App. 2013), which likewise struck down tree mitigation fees under Nollan and Dolan where the government did not show that tree removal "would harm the air quality, increase noise and glare, remove ecosystems, bring down property values, or reduce the other benefits of trees described in the ordinance." F.P. Development, 16 F.4th at 208-09.

51.   While F.P. Development was decided by the Sixth Circuit rather than the Eleventh Circuit, and therefore is persuasive rather than binding authority in this Court, it is the most thorough and directly applicable federal

appellate decision on tree removal ordinances under the Takings Clause and the unconstitutional conditions doctrine, and this Court should adopt its reasoning. The constitutional principles at issue — the Nollan/Dolan/Koontz framework — are Supreme Court precedents binding on this Court equally.

## D.    Substantive Due Process

52.    The Fourteenth Amendment's Due Process Clause protects property owners against arbitrary and unreasonable government interference with constitutionally protected property interests. See Kentner v. City of Sanibel, 750 F.3d 1274 (11th Cir. 2014). A land use regulation violates substantive due process where it is not rationally related to a legitimate government interest, or where the governmental action bears no substantial relation to the public health, safety, morals, or general welfare. Euclid v. Ambler Realty Co., 272 U.S. 365 (1926).

## E.    The Void-for-Vagueness Doctrine

53. A law is unconstitutionally vague if it fails to provide a person of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or if it authorizes or encourages arbitrary and discriminatory enforcement. Hill v. Colorado, 530 U.S. 703 (2000). A regulatory scheme that grants unbridled discretion to government officials without articulating adequate standards to guide that discretion is facially unconstitutional. See Grayned v. City of Rockford, 408 U.S. 104 (1972).

**F.    Relevant Eleventh Circuit Precedent**

54. The Eleventh Circuit has recognized strong constitutional protections for private property in the land use context. See Hillcrest Property, LLP v. Pasco County, 754 F.3d 1279 (11th Cir. 2014) (applying unconstitutional conditions doctrine to county land use exactions); South Grande View Development Co. v. City of Alabaster, 1 F.4th 1299 (11th Cir. 2021) (recognizing regulatory taking claims in zoning context); Kentner v. City of Sanibel, 750 F.3d 1274 (11th Cir. 2014) (substantive due process protections apply to property interests in land use).

**G.    Procedural Due Process**

55.    The Fourteenth Amendment's Due Process Clause prohibits the government from depriving a person of property without due process of law. U.S. Const. amend. XIV, § 1. Procedural due process requires, at minimum: (1) adequate notice of the governmental action; (2) a meaningful opportunity to be heard prior to the deprivation; and (3) that the deprivation be based on findings made in accordance with fair procedures. Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

56.    Where the government imposes a monetary penalty — a deprivation of a protected property interest — without conducting an adequate investigation into the facts giving rise to the penalty, without providing the affected party a pre-deprivation opportunity to contest responsibility, and without a rational evidentiary basis connecting the party to the alleged violation, the government deprives the party of property without due process of law. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9-10 (1978); see also Zinermon v. Burch, 494 U.S. 113, 127 (1990).

57.    A citation and penalty scheme that imposes liability on a property owner based solely on physical location — with no investigation into actual

responsibility, no notice, and no opportunity to contest prior to deprivation — does not satisfy the constitutional minimum. The government may not treat presence on a parcel as conclusive proof of culpability for vegetation changes occurring on that parcel, especially where a third party with independent legal authority performed the challenged act.

## VII. CLAIMS FOR RELIEF

## COUNT I — VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT (42 U.S.C. § 1983 — Regulatory Taking)

55. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

56. The City of Atlanta's Tree Protection Ordinance, by categorically prohibiting a property owner from removing trees on his own land without government authorization, constitutes a regulatory taking of private property without just compensation, in violation of the Fifth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment.

57.   As applied to Plaintiff, the Ordinance's denial of Plaintiff's permit application has deprived Plaintiff of his ability to make productive and lawful use of his Property. The denial prevents Plaintiff from carrying out activities that are otherwise legally permissible on the Property, substantially burdening Plaintiff's property rights.

58.   Applying the Penn Central factors: (a) the economic impact is severe, as Plaintiff cannot use portions of his Property as desired; (b) Plaintiff had a reasonable investment-backed expectation that he could manage vegetation on his own private land; and (c) the character of the government action reflects an appropriation of a private resource — private trees — for a public goal of urban canopy maintenance, without just compensation.

59.   The City of Atlanta has not provided just compensation to Plaintiff for this taking of his property rights.

## COUNT II — UNCONSTITUTIONAL CONDITIONS (42 U.S.C. § 1983 — Nollan / Dolan / Koontz)

60.   Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

61.    The Tree Protection Ordinance conditions the issuance of tree removal permits on property owners' agreement to: replant trees of specified species and caliper; fund off-site tree planting on public lands; or pay monetary recompense and fees into the City's Tree Trust Fund. These conditions are exactions imposed on the exercise of private property rights and are subject to constitutional scrutiny under Nollan, Dolan, and Koontz.

62.    Even assuming an essential nexus exists between Atlanta's interest in urban canopy preservation and its permit conditions — a point not conceded — the City cannot satisfy Dolan's rough proportionality requirement. As the Sixth Circuit made clear in F.P. Development, the government must make "some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." F.P. Development, 16 F.4th at 207 (quoting Dolan, 512 U.S. at 391). Counting trees and applying a pre-set formula does not constitute such a determination.

63.    Atlanta's Ordinance fails rough proportionality for the same reasons that Canton's failed in F.P. Development: (a) the City has made no finding that

Plaintiff's specific tree removal causes a quantifiable level of environmental degradation to the surrounding area; (b) the City has not considered whether circumstances specific to Plaintiff's property — such as the condition, species, or location of the trees — may reduce or eliminate any adverse impact; (c) the mitigation demands are pre-set and standardized, applied categorically without regard to actual impact; and (d) the mitigation formulas may be based on outdated data that does not reflect current environmental or economic conditions.

64. Because the Ordinance also imposes monetary exactions — recompense fees, mitigation payments — as conditions of permit approval, Koontz directly governs, and the City bears the burden of demonstrating that these monetary conditions satisfy the Nollan/Dolan test. The City cannot carry that burden.

65. The Ordinance violates the unconstitutional conditions doctrine as established by Nollan, Dolan, and Koontz, and the Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT III — SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983 — Fourteenth Amendment)

66.    Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

67.    Plaintiff has a constitutionally protected property interest in the use and enjoyment of his private property, including the ability to manage and remove vegetation from his own land.

68.    The Ordinance, as applied to Plaintiff, deprives him of this protected property interest in a manner that is arbitrary, capricious, and disproportionate to any legitimate government interest. The broad and standardless discretion granted to the City Arborist to approve or deny permits, impose conditions, and calculate fees renders the permitting scheme arbitrary and incompatible with substantive due process. Property owners cannot reasonably predict, in advance, what criteria will govern their applications or what outcome will result.

69.    The Ordinance's application to Plaintiff violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT IV — EQUAL PROTECTION (42 U.S.C. § 1983 — Fourteenth Amendment)

70. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

71. The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be treated alike. The City of Atlanta's administration and enforcement of the Tree Ordinance treats similarly situated property owners differently without rational basis. The City's permitting decisions are not made according to uniform, objective criteria, and similarly situated property owners receive different permit outcomes based on the subjective determinations of individual City Arborists.

72. To the extent the City selectively grants permits to some property owners while denying them to others on the basis of non-objective criteria, such selective enforcement violates the Equal Protection Clause of the Fourteenth Amendment.

## COUNT V — VOID FOR VAGUENESS (42 U.S.C. § 1983 — Fifth and Fourteenth Amendments)

73.    Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

74.    The Tree Protection Ordinance employs vague and undefined standards as bases for permit denial and for the imposition of heightened restrictions and financial penalties. These include, without limitation: "specimen tree," "environmental impact," "forest ecosystem," and "significant" tree canopy. These terms are not defined with sufficient specificity to give property owners fair notice of what conduct is permitted, what conduct will result in a denial, or what financial obligations will be imposed.

75.    As the F.P. Development court recognized, the "individualized assessment" that a tree ordinance may purport to provide in the permit review process does not cure the constitutional infirmity in the standardless application of mitigation requirements. F.P. Development, 16 F.4th at 208. The vagueness of Atlanta's standards compounds this deficiency by further empowering officials to act arbitrarily.

76. The Ordinance's vague standards permit — and in practice result in — arbitrary and inconsistent enforcement against similarly situated property owners, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments.

## COUNT VI — UNCONSTITUTIONAL PERMIT SCHEME / PRIOR RESTRAINT (42 U.S.C. § 1983 — Fifth and Fourteenth Amendments)

77. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

78. A permit scheme that grants unbounded discretion to government officials to determine whether a private party may exercise a fundamental property right — without clear, objective, and narrow standards to govern that discretion — is constitutionally infirm. See City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750 (1988).

79. The Ordinance conditions the exercise of the core property right to use and manage one's own land on prior government approval, without providing adequate substantive or procedural constraints on the City Arborist's authority to withhold that approval. The government, as the Sixth Circuit

emphasized in F.P. Development, may not "leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality" to the actual impacts of a specific property owner's proposed actions. F.P. Development, 16 F.4th at 206 (quoting Koontz, 570 U.S. at 606).

80. This unconstitutionally standardless prior restraint on private property rights violates the Fifth and Fourteenth Amendments.

## COUNT VIII — SUBSTANTIVE DUE PROCESS: DEPRIVATION OF THE RIGHT TO PROTECT LIFE AND HOME (42 U.S.C. § 1983 — Fourteenth Amendment)

81. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

82. The Fourteenth Amendment's substantive due process guarantee protects certain fundamental rights and liberty interests that are deeply rooted in the Nation's history and traditions and implicit in the concept of ordered liberty. Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997). The right to protect one's home and family from imminent physical danger — one of

the most ancient and recognized of all common law rights — falls within the core of these protected interests.

83. By requiring government approval before a homeowner may remove a structurally compromised, dead, dying, or storm-damaged tree that poses a clear and present danger to persons and property, the Ordinance infringes upon this fundamental liberty interest. The Ordinance substitutes the judgment of a government bureaucrat — who may be unavailable, unresponsive, or administratively slow — for the judgment of the homeowner who lives beneath the tree and bears the consequences of its failure.

84. The Ordinance's purported emergency exception is constitutionally insufficient. It does not eliminate the government's control — it merely shifts the timing of that control. Under the Ordinance, even emergency tree removal is subject to after-the-fact government review, the threat of punitive fines, and a City Arborist's unilateral determination of whether the homeowner's fear was justified. Atlanta Tree Conservation Commission, "Tree Removal Permits" ("[i]f the information submitted does not demonstrate the tree presented an imminent hazard, the city arborist may

assess recompense and a fine"). This after-the-fact punishment for self-protective action is a profound deterrent that chills the exercise of the right to protect one's family.

85. The human cost of this deterrent is documented and devastating. As set forth in paragraphs 39 through 43 above, Atlanta residents have died in their beds because hazardous trees were not removed in time. In the case of 10-year-old A'Erica Dixon, the danger was known — a major limb had already fallen — and yet the tree stood. In the case of Edward Johnson, a 61-year-old man died in his home during a storm. These are not anomalies. They are the foreseeable product of a regulatory scheme that imposes legal and financial consequences on the most basic act of self-preservation: removing a tree that threatens your family.

86. A government regulation that deters homeowners from removing trees known to pose mortal dangers, under threat of significant financial penalty, cannot be said to be rationally related to public safety — the government's own asserted justification for the Ordinance. It is, to the contrary, antithetical to public safety. Where a regulation's effect is the opposite of

its stated purpose, it fails even rational basis review. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446-47 (1985).

87.   The Ordinance's application to hazardous trees is arbitrary, irrational, and shocks the conscience. It demands that a parent with a leaning, rotting oak over her child's bedroom seek government permission before acting to protect that child — and threatens to fine her if a bureaucrat later disagrees with her assessment of the danger. This is precisely the kind of arbitrary governmental interference with fundamental liberty that the Fourteenth Amendment was enacted to prevent. See County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

88.   The Ordinance's treatment of hazardous trees, both on its face and as applied to Plaintiff, violates the substantive due process guarantee of the Fourteenth Amendment to the United States Constitution.

## COUNT IX — PROCEDURAL DUE PROCESS: ARBITRARY CITATION AND PENALTIES FOR THIRD-PARTY UTILITY WORK (42 U.S.C. § 1983 — Fourteenth Amendment)

89. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

90. In or around October 2025, the City of Atlanta deprived Plaintiff of a protected property interest — approximately $3,000 in civil penalties plus additional mitigation and recompensation obligations — based on tree trimming that Plaintiff did not perform, did not direct, did not authorize, and could not have prevented, because the trimming was carried out by Georgia Power or its authorized contractors pursuant to Georgia Power's independent legal authority.

91. The City's deprivation of Plaintiff's property was accomplished without constitutionally adequate process. Prior to issuing the citation and imposing penalties, the City: (a) conducted no investigation into the identity of the party responsible for the trimming; (b) did not contact Georgia Power or any utility representative; (c) did not review any utility maintenance or vegetation management records; (d) did not interview Plaintiff or provide him an opportunity to explain that a utility company had performed the work; and (e) did not provide Plaintiff any pre-deprivation notice or hearing. The entirety of the City's "investigation"

consisted of a drive-by observation and photographs of the trimmed trees — evidence establishing only that the trees had been trimmed, not who had trimmed them or under what authority.

92.    The City's enforcement methodology — penalizing the property owner of record based on physical location alone, with no inquiry into actual responsibility — does not satisfy the constitutional minimum of procedural due process. It is the functional equivalent of issuing a speeding citation to the registered owner of a vehicle regardless of who was behind the wheel. The Constitution requires more. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9-10 (1978).

93.    The City's citation of Plaintiff for utility work performed by Georgia Power is also independently arbitrary and irrational in violation of substantive due process. There is no rational basis for treating a property owner as the responsible party for vegetation management carried out by an electric utility acting pursuant to a legal right-of-way or easement. A regulation that imposes liability for the lawful acts of third parties possessing independent authority to act on private land — third parties whom the

property owner has no legal right to stop — is not rationally related to any legitimate government interest. It is punishment without fault, and confiscation without cause.

94. The City's imposition of penalties upon Plaintiff for the Georgia Power trimming, without conducting any meaningful investigation into responsibility, violated the procedural and substantive due process guarantees of the Fourteenth Amendment to the United States Constitution and deprived Plaintiff of property without due process of law.

## COUNT X — GEORGIA CONSTITUTION (Ga. Const. Art. I, § 1, ¶ II and Art. I, § 3, ¶ I)

95. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

96. Article I, Section I, Paragraph II of the Georgia Constitution provides: "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be deprived of life, liberty, or property except by due process of law."

97.  Article I, Section III, Paragraph I of the Georgia Constitution provides that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid.

98.  The City of Atlanta's Tree Protection Ordinance, by preventing Plaintiff from managing vegetation on his own private property without government authorization and by imposing substantial financial conditions as the price of receiving a permit, damages Plaintiff's property rights within the meaning of the Georgia Constitution. The City has not paid just compensation to Plaintiff for this damage to his property rights.

99.  The Ordinance also violates Georgia's constitutional guarantee that "protection to person and property is the paramount duty of government" by operating as a deterrent against the removal of trees that threaten human life. Georgia's Constitution does not permit the government to prioritize the preservation of trees over the protection of the lives of its citizens.

100.  The City's imposition of civil penalties on Plaintiff for tree trimming performed by Georgia Power, without any investigation into responsibility and without due process, independently violates Article I, Section I,

Paragraph II of the Georgia Constitution. The Georgia Constitution's guarantee that protection of person and property is the "paramount duty" of government is not satisfied by a municipality that fines a homeowner for the lawful acts of a third-party utility company it made no effort to identify.

101. The Ordinance further violates Plaintiff's right to due process under the Georgia Constitution to the extent its vague standards and unfettered administrative discretion deprive him of fair notice and meaningful judicial review.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Peter Nwaizuzu respectfully prays that this Court enter judgment in his favor and against Defendant City of Atlanta, and grant the following relief:

(a)    A declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2202, that the City of Atlanta Tree Protection Ordinance, Atlanta Code of Ordinances Chapter 158, Article II, is unconstitutional on its face and as applied to

Plaintiff, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections I and III of the Georgia Constitution;

(b)    A preliminary and permanent injunction, pursuant to Fed. R. Civ. P. 65, prohibiting the City of Atlanta, its officers, agents, servants, employees, and all those acting in concert with them, from enforcing the Tree Protection Ordinance against Plaintiff and from imposing any fines, penalties, recompense, or mitigation requirements on Plaintiff arising from his removal of trees on his own property;

(b)(i) To the extent the Court declines to enjoin enforcement of the Ordinance in its entirety, Plaintiff alternatively requests a preliminary and permanent injunction specifically prohibiting the City from imposing any permit requirement, fine, penalty, recompense, or mitigation obligation on any property owner who removes a tree that posed, or reasonably appeared to pose, an imminent threat to the safety of persons or property, without regard to whether the owner obtained prior government approval or satisfied post-hoc documentation requirements;

(b)(ii) An order vacating and expunging the citation, civil penalties, and all mitigation or recompensation obligations imposed upon Plaintiff in connection with the October 2025 tree trimming performed by Georgia Power or its contractors, and requiring the City to refund any amounts paid by Plaintiff in connection therewith;

(c)    Nominal damages for the constitutional violations suffered by Plaintiff;

(d)    Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law;

(e)    Such other and further relief as this Court deems just, equitable, and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,


**Peter Nwaizuzu**

Plaintiff, Pro Se

750 Milton Dr McDonough GA 30252

Telephone: 6783797190

Email: nwaizuzu@gmail.com


Dated: 03/16/26